### STATE v. JOHN T. FORCE.

Submitted December 6, 1912—Decided March 10, 1913.

An indictment charging that defendant willfully, fraudulently and unlawfully had and distributed thirty official sample general election ballots, the defendant not being such person as is authorized by law to have and distribute in large lots such official sample general election ballots, charges no crime.

On *certiorari* and motion to quash indictment.

Before Justices SWAYZE, VOORHEES and KALISCH.

For the state, *Richard S. Kuhl.*

For the defendant, *George H. Large.*

The opinion of the court was delivered by

SWAYZE, J. The charge in the indictment is that the defendant willfully, fraudulently and unlawfully had and distributed thirty official sample general election ballots, the defendant not being such person as is authorized by law to have and distribute in large lots such official sample general election ballots. The indictment concludes in the usual form that the act of defendant was contrary to the form of the statute.

The statute appealed to by the state is section 68 of chapter 183 of the laws of 1911. It enacts that "no person not au-

thorized by the proper officers shall print or make any official or sample ballot provided for in this act, or on or prior to election day have in his possession an official ballot, without being such person as is authorized by this act to have charge or possession thereof." A clear distinction is made between official and sample ballots. No one not authorized is allowed to print or make either style of ballot; and no one is allowed to have in his possession prior to election day an official ballot. By dealing with both official and sample ballots in the first clause, and with official ballots only in the second clause, the legislature limited in the most pointed way the application of the latter. This limitation was necessary, since if the clause had the meaning contended for by the state, we should have the absurd result that it would be a crime to have possession of a sample ballot prior to election day, while the statute carefully provides for the distribution of such ballots a week before. This absurdity could not be avoided by holding that each voter to whom the clerk is required to mail a sample ballot is a person authorized to have charge or possession thereof; if that had been the meaning the change of the language from the first clause to the second clause of this section would have been needless and inexplicable; it would have been enough to enact that no person not authorized by the proper officers shall print, make or have in his possession any official or sample ballot provided for in the act. Our construction in nowise militates against the object of the act. The intent was to keep the official ballots for use at the election and to furnish the samples for the information of the voter. There is no limitation upon the number of sample ballots a voter may have if he secures them properly and not by conspiracy with or the connivance of the persons charged with the duties of printing and distributing.

We see no objection to a voter securing, if he can do so honestly from other voters, their sample ballots and distributing them so as to further and assist the work of instruction in the use of the official ballots required to be used at the polls. We reach this result from the language of section 68. Any doubt, if any arose from that language, would be removed by section

61, which enacts that "no official ballots (*other than official sample ballots*) shall be distributed outside the polling place." The collocation of these words, with the provisions regulating voting on election day, leads irresistibly to the inference that official sample ballots may be distributed outside the polling place. The object of the act of 1911 was not to throw obstacles in the way of proper instruction of less intelligent voters, but to secure purity of elections as far as possible by limiting the actual voting to official ballots procurable only inside the polling place.

This indictment charges no crime and must be quashed.